JOHN L. WILLIAMS *vs.* CHARLES E. DUNN.

Aroostook.    Opinion November 21, 1921.

*The taking of property on a replevin writ without taking a bond as required by statute is unauthorized, but if plaintiff in replevin action is entitled to possession of the property under a mortgage, he is liable for nominal damages only, but if not entitled to such possession under a mortgage, he is liable for such actual damages as would be recoverable on a statutory bond had one been taken. Where the delivery of a commodity named constitutes the consideration for a mortgage note, and such commodity is not delivered as required by conditions of the contract, such note is unenforceable and the mortgage securing same is likewise effected. If such note is payable either in a commodity or cash, and promisor offers to pay before maturity in cash for such part of the commodity constituting the consideration for the note as has been delivered, which is refused by payee, then all rights of possession of the mortgaged chattels under the mortgage are lost. If the property taken is not returned, the value of the property taken constitutes the damage recoverable, less amount due for such part of the consideration for the note as was delivered after deducting damages for failure for complete delivery.*

The deputy sheriff failing to take the bond required by the statute was without authority to take the property of the plaintiff in this action on the replevin writ, but if the plaintiff in the replevin writ was entitled to possession under his

mortgage, then the plaintiff in this action suffered no actual damage and the defendant would be liable for only nominal damages;

If the plaintiff in the replevin suit was not entitled to possession under his mortgage, the plaintiff's damages in this action are measured by the actual damages recoverable by him in an action on the statutory bond, if one had been taken

If the mortgage note given by the plaintiff in this action was payable only in the commodity named, the failure of the payee, who was the plaintiff in the replevin suit, to carry out the contract on his part and deliver the entire amount of fertilizer for which the mortgage note was given, rendered the note unenforceable according to its terms and being unenforceable the mortgage given to secure its performance fell with it;

If the note was payable either in the commodity named or in cash, which is held to be the true construction, the plaintiff having offered to pay in cash before the date of maturity for all fertilizer actually delivered, which was refused, such offer *ipso facto* put an end to the rights of the mortgagee to possession of the mortgaged chattels and restored the sole right of possession to the mortgagor;

If the potatoes had been returned by the plaintiff in the replevin suit, the plaintiff in this action would still have been liable to him for the value of the fertilizer actually delivered, less such damages as were suffered by reason of a failure to fulfill the agreement, which the jury have assessed by a special finding in this action at $600;

By retaining the potatoes, the plaintiff in the replevin suit was estopped from recovering of the plaintiff in this action for the value of the fertilizer actually delivered; and in a suit by this plaintiff on the replevin bond, if one had been taken, upon the bond being chancered by the court, the damages recoverable would have been the value of the potatoes taken, less the sum due for fertilizer actually delivered after deducting the damages for failure of complete delivery.

On report. This is an action brought by John L. Williams against Charles E. Dunn, sheriff of Aroostook County, for the illegal taking from the plaintiff, by George W. Graves, a deputy of the defendant, of one thousand two hundred sixty-three barrels of potatoes of the agreed value of six thousand three hundred and fifteen dollars, on a replevin writ, without taking from the plaintiff in replevin the bond required by statute. After the testimony was completed, and after special findings by the jury, and under a certain stipulation agreed upon, by agreement of the parties the case was reported to the Law Court for final determination. Judgment for the plaintiff in the sum of $4,387.50 with interest from date of writ.

Case is fully stated in the opinion.

*Powers & Guild, and Howard Pierce,* for plaintiff.

*Archibalds,* for defendant.

SITTING: CORNISH, C. J., SPEAR, PHILBROOK, WILSON, DEASY, JJ.

WILSON, J. An action on the case against the defendant as sheriff of Aroostook County for damages resulting from failure of one of his deputies to take a bond from the plaintiff in a replevin suit which was dismissed for want of proper service and the chattels replevied ordered returned to the defendant in the replevin suit, who is the plaintiff in this action, which the plaintiff in the replevin suit refused to do, claiming title to them under a foreclosed chattel mortgage.

In the spring of 1919 one Sylvester entered into an agreement with the plaintiff Williams to furnish him with thirty tons of potato fertilizer at $84.25 per ton for use on his farm during the season of 1919, and took from the plaintiff his note for the sum of $2,527.50, payable in 1,263 bbls. of potatoes on December 1st, 1919, to secure the payment of which the plaintiff executed a chattel mortgage to Sylvester of all the potatoes grown on his homestead farm during that season.

At the close of the planting season the plaintiff notified Sylvester that he had not received all the fertilizer due him under the agreement, and after some inquiries and investigation by Sylvester with a view to determining the amount actually delivered, the plaintiff, upon Sylvester refusing to deliver any more, notified him that he should not deliver the potatoes in payment of the note; and before the note was due offered to pay for the fertilizer actually delivered which was refused by Sylvester.

On the first day of December, 1919, when the note became due, Sylvester placed a replevin writ in the hands of one of the defendant's deputies directing him to replevy thereon 1,263 bbls. of potatoes then in the hands of the plaintiff Williams, and being the amount due Sylvester under the terms of the note and part of those covered by the chattel mortgage. The deputy sheriff, however, before service of the writ, through an oversight, failed to take the bond required by Sec. 10, Chap. 101, R. S., from Sylvester, the plaintiff in the replevin suit, and also failed to properly serve the writ, by reason of which lack of service the writ was dismissed upon motion of Williams, the defendant in that action, and return and restitution of the chattels was ordered by the court.

In February, 1920, foreclosure proceedings on the chattel mortgage given by the plaintiff Williams were begun by Sylvester, but as we now view the case, it in no way effected the rights of the parties in this action.

It is clear that the deputy sheriff upon failing to take a bond as required by statute was without authority to take the property then in the possession of Williams on the replevin writ and became thereby a trespasser and also liable to him in damages in this action. *Tuck* v. *Moses*, 54 Maine, 115; *Parker* v. *Hall*, 55 Maine, 362; R. S., Chap. 101, Sec. 18.

If Sylvester was entitled to possession as mortgagee, and the title finally vested in him by the foreclosure proceedings, then the plaintiff has suffered no actual damage, and the defendant would be liable in this action for only nominal damages; inasmuch as if the deputy had taken the statutory bond, the title not being determined in the replevin suit, Sylvester's title in a suit upon the bond by the plaintiff could have been shown and only nominal damages recovered thereon. *Harmon* v. *Flood et als.*, 115 Maine, 116.

But if Sylvester was not entitled to the possession of the potatoes under his mortgage, then the plaintiff's damages in this form of action are measured by the actual damages recoverable by him against Sylvester in an action upon the statutory bond in case one had been taken.

We think Sylvester was not entitled to possession of the potatoes under the mortgage. The instrument signed by the plaintiff in the form of a promissory note for $2,527.50 and payable in 1,263 bbls. of potatoes was either an agreement to pay only in the commodity named, or to pay in the commodity named or in cash, at the option of the promissor. *Heywood* v. *Heywood,*. 42 Maine, 229; *Strout* v. *Joy*, 108 Maine, 267; 3 R. C. L., 890; 24 Am. Dec., 422, note. We think the latter upon the authorities cited. But if the former, the jury found that there was a breach of the agreement on the part of Sylvester through his failure to deliver the entire amount of fertilizer in payment of which the note was given, and also found that the plaintiff was damaged by said breach to the amount of six hundred dollars. The plaintiff notified him of the breach before the close of the planting season, and some time before its maturity, that he should refuse to deliver the potatoes on the day named in the note.

If the note be construed as payable only in the commodity named, upon failure by Sylvester to carry out his part of the agreement, the note or agreement of the plaintiff became unenforceable, and being no longer enforceable by Sylvester, the mortgage given to secure its performance must fall with it.

No doubt Sylvester could recover on a *quantum meruit* for the fertilizer actually delivered and used by the plaintiff, less the damages resulting to the plaintiff for a failure to fulfill the express contract, the amount of which damages the jury have already determined. *Holden Steam Mill* v. *Westervelt*, 67 Maine, 446; *Hattin* v. *Chase*, 88 Maine, 237; *Viles* v. *Kennebec Lumber Co.*, 118 Maine, 148. But a mortgage to secure the performance of a special agreement cannot be held to be a valid security for an obligation of an entirely different nature though springing from the same transaction.

Upon this view of the agreement the mortgage cannot be construed as a security for the indebtedness merely, nor be treated as a mortgage to secure future advances, and good to the amount advanced. It must be viewed as a security for the performance on the part of the plaintiff Williams of his part of the agreement, and being relieved of that performance by the breach on the part of Sylvester, the mortgage became unenforceable, and Sylvester, on December 1st, 1919, had no rights thereunder.

If the note is to be construed as payable either in the commodity named or in cash, which we think is the true construction, it then appears that the plaintiff offered to pay before the date of maturity all sums due for fertilizer actually delivered, which was refused by Sylvester. Tender of performance *ipso facto* puts an end to the interest of the mortgagee and restores the sole right of possession to the mortgagor. *Ramsdell* v. *Tewksbury*, 73 Maine, 197, 199; R. S., Chap. 96, Sec. 3.

Sylvester not being entitled to possession of the potatoes upon any view of their agreement, they should have been returned in accordance with the order of the court.

What loss, then, has the plaintiff in this action suffered by reason of the failure of the officer to take from Sylvester the statutory bond. If the potatoes had been returned, the plaintiff would still have been liable for the value of the fertilizer delivered less the damages suffered from the breach of the agreement. By retaining the potatoes Sylvester is estopped from recovering of the plaintiff the value of the

fertilizer. Obviously, in the final analysis, the actual loss suffered by the plaintiff from the fault of the officer is the value of the 1,263 bbls. of potatoes, admitted to be $6,315, less the value of the fertilizer delivered, which, after deducting the damages suffered by the plaintiff, according to the special finding of the jury, is $1,927.50. We think on a suit on the bond, if one had been taken, upon its being chancered by the court in the exercise of its equity powers, such would have been the result. *Burbank* v. *Berry*, 22 Maine, 483, 485; *Clifford* v. *Kimball*, 39 Maine, 413; *Lewis* v. *Warren*, 49 Maine, 322; *Philbrook* v. *Burgess*, 52 Maine, 271; *Corson* v. *Dunlap*, 83 Maine, 32, 40.

While the court in chancering the penalty of a bond would not adjust all claims between the parties, it would determine what in view of their rights growing out of the transaction in connection with which the bond was given equity and good conscience required the obligor to pay. As the court said in *Burbank* v. *Berry*, supra: "The damages actually sustained was the equitable and proper measure of the plaintiff's claim," and in *Sevey* v. *Blacklin*, 2 Mass., 541: "When it shall appear that the penalty is forfeited; then the equity powers of the Court commence; and the Judges are authorized to enter judgment for so much money as in equity and good conscience the plaintiff can claim."

The plaintiff in a suit on a replevin bond, if one had been taken from Sylvester, being relieved by Sylvester's acts in refusing to restore the potatoes, of all liability for the value of the fertilizer delivered, could not in equity and good conscience claim more damages from the failure to return the potatoes than the difference between their value and his own liability for the fertilizer in case they had been returned.

Judgment must, therefore, be entered for the plaintiff in this action in the amount of $4,387.50 with interest from the date of the writ.

*So ordered.*